## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AOUNI ABOUSALEH,

     Plaintiff,                               Case No.
                                               Hon.

v.

CONTINENTIAL STRUCTURAL PLASTICS, INC., a foreign corporation,
BRET HANNAM, in his individual and corporate capacity,
JEFF GESSNER, in his individual and corporate capacity,
TOM SMITH, in his individual and corporate capacity,
BRUCE EISERLE, in his individual and corporate capacity,
ROXANNE SIEBENECK, in her individual and corporate capacity,
GREG GRAHAM, in his individual and corporate capacity,
JINA GRAHAM, in her individual and corporate capacity, and
JESSEKA FERDON (formerly JESSEKA GRAHAM), in her individual and corporate capacity,

     Defendants.
_____/

THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE, PLLC
Attorneys for Plaintiff
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com

_____/

## PLAINTIFF'S COMPLAINT AND
## DEMAND FOR JURY TRIAL

Plaintiff, Aouni Abousaleh, by and through his attorneys, the Law Offices of Thomas R. Warnicke, PLLC, and for his Complaint against Defendants, states as follows:

## JURISDICTION AND VENUE

1.   Plaintiff, Aouni Abousaleh ("Plaintiff"), brings this civil action against Defendants for violation of the Fair Labor Standards Act and other common law claims set forth herein.

2.   Plaintiff is bringing this civil action to recover damages and injunctive relief against Defendants for committing acts prohibited under federal and state law.

3.   Plaintiff currently resides in Dearborn, Michigan, and at all times relevant hereto, was a citizen and resident of the county of Wayne, State of Michigan, and within the jurisdiction of the Court.

4.   Defendant, Continental Structural Plastics, Inc. (herein after referred to as "CSP"), is a full-service, design responsible supplier that creates composite materials to produce body panels, pickup boxes, structural components and more.

5.   CSP is a Delaware corporation, with its corporate world headquarters at 255 Rex Boulevard, Auburn Hills, Michigan 48326.

6.  CSP's resident agent listed with the state of Michigan's Department of Licensing and Regulatory Affairs is The Corporation Company, 40600 Ann Arbor Road E., Ste. 201, Plymouth, Michigan 48170.

7.  CSP employees approximately 4,200 people worldwide.

8.  CSP is within the jurisdiction of this Court.

9.  Upon information and belief, Defendant Brett Hennam ("Defendant Hennam"), was employed by Defendant CSP as Quality Manager, approximately 2011 to early 2018.

10. Upon information and belief, in approximately February or March of 2018, Defendant Hennam was promoted by CSP to the position of Operation Manager.

11. Upon information and belief, Defendant Hennam is a resident and citizen of the state of Ohio.

12. Upon information and belief, Defendant Jeff Gessner ("Defendant Gessner"), was employed by Defendant CSP as Plant Manager of its Carey, Ohio plant at times relevant hereto.

13. Upon information and belief, Defendant Gessner is a resident and citizen of the state of Michigan and resides within the jurisdiction of this Court.

14.   Upon information and belief, Defendant Tom Smith ("Defendant Smith"), was employed by Defendant CSP as Quality Engineer of its Carey, Ohio plant from approximately 2013 to the present.

15.   Upon information and belief, Defendant Smith is a resident and citizen of the state of Ohio and resides within the jurisdiction of this Court.

16.   Upon information and belief, Defendant Bruce Eiserle ("Defendant Eiserle"), was employed by Defendant CSP as Product Line Manager of its Carey, Ohio plant from approximately 2011 to 2016.

17.   Upon information and belief, in approximately November of 2016 Defendant Eiserle was promoted by CSP to Corporate District Product Line Manager and has worked in that position through the present date.

18.   Upon information and belief, Defendant Eiserle is a resident and citizen of the state of Ohio.

19.   Upon information and belief, Defendant Roxanne Siebeneck was employed by Defendant CSP in its Human Resources Department in 2017.

20.   Upon information and belief, Defendant Roxanne Siebeneck is a resident and citizen of the state of Ohio.

21.   Upon information and belief, Defendant Greg Graham has been employed by Defendant CSP in the position of Liason at Jeep from approximately July of 2009 through the present date.

22.   Upon information and belief, Defendant Greg Graham is a resident and citizen of the state of Ohio.

23.   Upon information and belief, Defendant Jina Graham has been employed by Defendant CSP in the position of Quality Inspector from approximately 2010 through the present date.

24.   Defendant Jina Graham is married to Defendant Greg Graham.

25.   Upon information and belief, Defendant Jina Graham is a resident and citizen of the state of Ohio.

26.   Upon information and belief, Defendant Jesseka Ferdon (formerly Jesseka Graham) has been employed by Defendant CSP in the position of Quality Inspector from approximately 2011 through the present date.

27.   Jesseka Ferdon is the daughter of Greg and Jina Graham.

28.   Upon information and belief, Defendant Jesseka Ferdon is a resident and citizen of the state of Ohio.

29.   This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) pursuant to Plaintiff's claims under the Fair Labor Standards Act - 29 U.S.C. § 201 *et. seq.*

30.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

31.   Venue is proper in this district pursuant to 28 USC § 1391.

## <u>GENERAL ALLEGATIONS AND STATEMENT OF CLAIMS</u>

32.   Plaintiff repeats and re-alleges the allegations set forth above.

33.   Plaintiff worked for Johnson Controls from approximately 2000 through 2009 in the position of Company Liaison at Chrysler Jeep (hereinafter Jeep), which was located in Toledo, Ohio.

34.   Plaintiff was classified as an employee with Johnson Controls.

35.   Plaintiff received his hourly pay with standard payroll deductions being taken therefrom.

36.   Plaintiff also received various fringe benefits from Johnson Controls, including health, vision and dental insurance, pension, 40lk and the like.

37.   During his employment with Johnson Controls, Plaintiff worked alongside and become very familiar with many Jeep employees.

38.   On such Jeep employee was John Vargo, who was Jeep's Supplier Quality Manager.

39.   Through Plaintiff's work for Johnson Controls with Jeep from 2000 to 2009, Plaintiff gained a business reputation as being highly effective, knowledgeable, personable and very good to work with by the Jeep employees.

40.   In or about 2009, Johnson Controls began shutting various locations due to the economy and many of its employees' jobs were eliminated, including Plaintiff's.

41.   During this time in 2009, John Vargo of Jeep became aware of Plaintiff being available for employment and Mr. Vargo contacted CSP and highly recommended that they contact Plaintiff and retain Plaintiff's services as CSP's Company Liaison to the Jeep plant.

42.   In 2009, Plaintiff was offered a position by CSP as its Company Liaison to Jeep for the afternoon shift.

43.   The position offered to Plaintiff was an hourly job in the amount of $25 per hour.

44.   Plaintiff inquired about receiving employee benefits, such as health, vision, dental, 401k, etc.

45.   CSP informed Plaintiff that because they had just got the contract with Chrysler, CSP would consider implementing employee benefits to Plaintiff after things got rolling.

46.   The afternoon Company Liaison shift ran from 5:00pm to 3:30am (or until the production line goes down).

47.   The day Company Liaison shift ran from 5:30am to 4:00pm (or until the production line goes down).

48.   Plaintiff accepted CSP's offer of employment as its Company Liaison and began working for CSP in 2009.

49.   When Plaintiff started his employment with CSP, the day shift Company Liaison was Defendant Greg Graham.

50.   Plaintiff was shocked upon receiving his first paycheck that CSP did not take any standard deductions therefrom.

51.   Rather, Plaintiff was provided a check in the amount of his $25 per hour, times the number of hours worked, with no payroll deductions being taken therefrom.

52.   Plaintiff promptly inquired to CSP management about the situation.

53.   Plaintiff was told that he was a contract employee, but that he would be paid hourly without any payroll deductions being taken.

54.   Plaintiff expressed his disagreement and told CSP management that his job duties as Company Liaison with CSP was the same as his job was with Johnson Controls wherein he was classified as an employee.

55.   Plaintiff was told by CSP management that they would review the matter and get back to him.

56.   During his employment, Plaintiff continuously told CSP that he needed a proper badge to be issued from CSP to allow for swipe entrance into the Chrysler Jeep plant in Toledo, Ohio.

57.   Plaintiff was instructed by CPS to continue to use his Johnson Controls badge, despite the fact that he was no longer employed by Johnson Controls.

58.   Plaintiff expressed his concerns and objection to using the Johnson Control badge.

59.   However, CSP failed to remedy the situation in any manner and continued to require Plaintiff to use his Johnson Controls badge.

60.   During his employment, Plaintiff became frustrated because CSP allowed Defendant Greg Graham to hire his wife, Defendant Jina Graham, to assist him in performing his day shift Company Liaison position.

61.   During the time period that Greg Graham worked for CSP in day shift Company Liaison position, Mr. Graham also had a job with Dana Corporation.

62.   Mr. Graham's position with Dana Corporation was a full-time position.

63.   Mr. Graham received employee benefits from Dana Corporation during the same time he was working for CSP.

64.   Plaintiff informed CSP management that it was extremely unfair and discriminatory that CSP would allow Mr. Graham to work another full-time job (i.e. with Dana Corporation), when he was working as CSP's day shift Company Liaison.

65.  The reason CSP hired Jina Graham to assist Greg Graham was to allow him to work a second job with Dana Corporation.

66.  Mr. Graham was unable to complete his daily job requirements with CSP because of his job with Dana Corporation.

67.  Incredibly, CSP refused to take any action and allowed Jina Graham to continue to work for CSP and essential perform many of the job functions that Greg Graham was required to perform.

68.  Even more incredibly, CSP allowed for Mr. Graham to hire his daughter, Jesseka Ferdon, to further assist him in completing the job duties and requirements that he was responsible for.

69.  Again, Plaintiff expressed how extremely unfair it was for him to have the same duties and job requirements as Greg Graham, but that Mr. Graham was given at least two additional persons paid by CSP to assist him.

70.  Even more incredibly than the above, despite having three people on CSP's payroll to do the sole job of day shift Company Liaison, the day shift routinely failed to complete their job duties and responsibilities.

71.  Thus, when Plaintiff reported to work, he would not only have his standard responsibilities, but would inherit the duties and responsibilities that the Grahams failed to perform during their day shift.

72.    Additionally, the Grahams would often miss work days, go on vacations, and be missing in action.

73.    This would also require Plaintiff to do the work of many people, which far and away exceeded his duties and responsibilities.

74.    When Plaintiff brought his concerns to CSP management, he was repeatedly told to just shut up and worry about himself.

75.    Plaintiff's requests for additional staffing to assist him were to no avail.

76.    Over the years, Plaintiff revisited his requests to be paid as an employee and not an independent contractor, as well as to receive employee benefits, such as health insurance.

77.    Plaintiff was always rebuffed in his efforts and told he needed to just keep his mouth shut and worry about doing his job.

78.    Finally, having reached the height of his frustration, Plaintiff brought his complaints to CSP's management about becoming classified as an employee rather than a contract employee.

79.    On or about June 16, 2017, Plaintiff emailed Defendant Bruce Eiserle and once again expressed his complaints about being misclassified as a contract employee rather than a full-time employee.

80.   In addition, Plaintiff found out that Defendant Greg Graham was making more money than him while Plaintiff was required to complete not only his own work, but Defendant Greg Graham's work as well.

81.   Plaintiff again questioned why he wasn't being paid the same as Defendant Greg Graham, nor being considered a full-time employee with benefits when he was required to complete his work along with Defendant Greg Graham's work.

82.   On or about June 17, 2017, Defendant Bruce Eiserle emailed Plaintiff back informing him that he would set up a meeting with CSP's management to discuss Plaintiff's concern about being classified as a full-time employee with benefits.

83.   On or about July 14, 2017 Plaintiff asked Defendant Bruce Eiserle if there was any update on the meeting because he never heard back.

84.   On or about July 19, 2017, Plaintiff sent a text message to Quality Engineer, Tom Smith, asking him if they had any one who could be hired in as help.

85.   Plaintiff was exhausted and run-dry from working countless hours to complete his work, as well as Defendant Greg Graham's work, all while being misclassified as an independent contractor and receiving a lower pay rate than Defendant Greg Graham.

86.   Tom Smith replied to Plaintiff informing him that he didn't have anyone, and that he was still trying to figure out employee options for Plaintiff.

87.   Thereafter, Defendant Bruce Eiserle forwarded Plaintiff's concern about correcting his classification to employee CSP Tom Smith.

88.   Again, CSP management failed to take any steps to remediate Plaintiff's incorrect classification as a contractor and not an employee.

89.   Plaintiff again reached a point of extreme frustration.

90.   As a result, on or about September 21, 2017, Plaintiff filed a complaint with the United States Department of Labor regarding his misclassification by CSP as a contractor rather than as an employee.

91.   The US Department of Labor confirmed Plaintiff's complaint against CSP in a letter dated September 27, 2017, as evidenced by the document attached to this Complaint as **Exhibit A**.

92.   Shortly thereafter, Plaintiff informed various persons in CSP management that he had filed a formal complaint with the US Department of Labor and that CSP would be hearing from the Department of Labor soon.

93.   On October 11, 2017, the US Department of Labor contacted CSP and informed them that Plaintiff had filed a complaint against CSP relating to CSP not being in compliance with federal laws.

94.   On October 12, 2017, which was only two weeks after Plaintiff filed his complaint with the Department of Labor and the very next day after the Department of Labor contacted CSP about Plaintiff's complaint, CSP "suspended" Plaintiff from his job with CSP.

95.   Plaintiff's filing of his complaint with the Department of Labor against CSP was the direct and proximate cause of his suspension by CSP.

96.   CSP's suspension of Plaintiff was in direct retaliation against Plaintiff for his filing of his complaint against CSP with the Department of Labor.

97.   While working for CSP, CSP provided Plaintiff with a CSP issued phone.

98.   The CSP company issued phone that was provided to Plaintiff, as well as all monthly charges relating to that phone, was paid in full by CSP.

99.   While working for CSP, CSP provided Plaintiff with a CSP email address.

100.   The email address CSP provided to Plaintiff was aouni.abousaleh@ cspplastics.com.

101.   During approximately the first year of Plaintiff's working for CSP, he worked for CSP approximately 40 hours per week.

102.   During this period of time, Plaintiff was compensated by CSP on an hourly basis at $25 per hour.

103.   If Plaintiff worked in excess of 40 hours per week, CSP only paid Plaintiff his standard hourly time (i.e. Plaintiff was not paid overtime by CSP).

104.   Plaintiff received only one pay rate increase, by $1 from $25 to $26, during his entire time working for CSP.

105.   After approximately the first year of Plaintiff's working for CSP, Plaintiff's standard hours worked per week were approximately 50.

106.   During this period of time, Plaintiff continued to be compensated by CSP on an hourly basis.

107.   If Plaintiff worked in excess of 40 hours per week, CSP only paid Plaintiff his standard hourly time (i.e. Plaintiff was not paid overtime).

108.   After a few years working CSP, Plaintiff's standard hours worked per week were approximately 50-70.

109.   Again, Plaintiff never was paid overtime by CSP, even if he worked in 50, 60 or 70 hours per week.

110.   From the time he started working for CSP in 2009 through his suspension in October of 2017, Plaintiff's sole job was with CSP.

111.   During this time period, CSP knew that Plaintiff's sole job was with CSP.

112.   While Plaintiff was working for CSP, CSP controlled everything about the manner in which Plaintiff was to perform his job on behalf of CSP.

113.   While Plaintiff was working for CSP, CSP provided all of the equipment and/or tools that were used by Plaintiff in performing his job on behalf of CSP, and Plaintiff was not and did not provide any of his own tools or equipment to perform his job for CSP.

114.   While Plaintiff was working for CSP, there was no opportunity for profit or loss by Plaintiff.

115.   Plaintiff never worked as a supervisor for Defendant CSP, nor did Plaintiff ever work in any type of supervisory position on behalf of CSP.

116.   In fact, Plaintiff's job performance had no effect on the amount of his pay, which was set at an hourly rate of $25 at the time of his hire, with Plaintiff only receiving one pay rate increase, of $1 per hour, during his 8+ years of employment to $26 per hour.

117.   While Plaintiff was working for CSP, there was an extremely high degree to which Plaintiff's work on behalf of CSP was of an ongoing and permanent nature, as evidenced by the fact that Plaintiff's job duties and responsibilities remained the same during the entire 8+ years working for CSP; that Plaintiff was required to be present during his shift at the Chrysler Jeep facility every week from Monday through Saturday; that Plaintiff's hours started at 40 hours per week and increased over time to

up to 70 hours some weeks; and, that Plaintiff was required to swipe into the Chrysler Jeep plant.

118. The Form 1099s attached to this Complaint as **Exhibit B**, are genuine copies of the 1099s that were issued from CSP to Plaintiff for the years 2010, 2011, 2012, 2013, 2014, 2015, 2016 and 2017 (less the redactions of Plaintiff's social security number and address).

119. While Plaintiff was working for CSP, Plaintiff was not allowed by CSP to use independent judgment or skill in performing his work duties.

120. While Plaintiff was working for CSP, CSP literally controlled everything about the manner in which Plaintiff was to perform his job on behalf of CSP.

121. While Plaintiff was working for CSP, Plaintiff was never paid on a salary basis.

122. During this time period, CSP knew that Plaintiff should have been classified as an employee, rather than as an independent contractor.

123. CSP classified Plaintiff as an independent contractor to avoid paying various state and federal payroll taxes associated with having an employee versus an independent contractor.

124. CSP also engaged in a pattern and practice to knowingly and unlawfully classifying numerous other CSP workers as independent contractors, rather than employees.

125. As of the date of the filing of this Complaint, Plaintiff has not been informed by Defendants that his suspension has been lifted or that Plaintiff has been terminated.

## COUNT 1

## VIOLATION OF THE FAIR LABOR STANDARDS ACT "FLSA" - 29 USC 201 et seq.

126. Plaintiff repeats and re-alleges the allegations set forth above.

127. At all relevant times, Defendants were Plaintiff's employer as that term is defined in the Fair Labor Standards Act,

128. At all relevant times, Plaintiff was an employee covered under the Fair Labor Standards Act.

129. In Plaintiff's work for CSP, Plaintiff was engaged in the production of goods for CSP.

130. Plaintiff consistently worked in excess of 40 hours per week for CSP.

131. CSP misclassified Plaintiff's status while working for CSP as an independent contractor, while Plaintiff was an employee.

132. CSP's misclassification of Plaintiff was deliberate and intentional.

133. Because of CSP's misclassification, Plaintiff has suffered damages including, but not limited to, lost wages for CSP's failure to compensate him for overtime pay.

134. Plaintiff is entitled to an amount equal to the overtime pay and lost wages he suffered in liquidated damages.

135. Plaintiff is also entitled to interest on any damages to which he is awarded.

136. Additionally, Defendants retaliated against Plaintiff in violation of the FLSA when they suspended and/or terminated Plaintiff in violation of the antiretaliation provisions of the FLSA because Plaintiff had asserted his rights under the FLSA, including on his own to Defendants, as well as filing a complaint and/or instituting a proceeding relating to the FLSA through the U.S. Department of Labor.

137. As a result, Plaintiff suffered lost future wages and other forms of economic damages.

138. Additionally, as a direct and proximate result of Defendants' unlawful actions and retaliatory actions, Plaintiff has sustained injuries and damages including, but not limited to, humiliation and embarrassment; mental and emotional distress; humiliation, anxiety, frustration, helplessness, depression, sadness, indignation, sleeplessness, embarrassment, degradation, shame, nausea, headaches, grief, dejection, misery and

physical harm, and loss of the ordinary pleasures of everyday life, including the right to a gainful occupation of choice.

139. In addition to all economic damages to which Plaintiff is entitled to under the FLSA, Plaintiff is also entitled to recover his mental distress damages under 29 USC 216(b) in connection with the antiretaliation provisions of the FLSA See, *Moore v Freeman,* 355 F3d 558 (6th Cir 2004).

140. Plaintiff is also entitled to punitive damages for Defendants' retaliatory actions against Plaintiff.

141. Plaintiff is also entitled to the grant of injunctive relief from this Court pursuant to 29 USC 217 to restrain Defendants' violations of the FLSA.

142. Such equitable relief Plaintiff seeks and is entitled to is reinstatement as well as an Order that Defendants cease and desist from engaging in any further practices that violate the FLSA.

143. Additionally, upon information and belief, Plaintiff believes that there are other similarly situation current or former employees of Defendants that were also intentionally misclassified as independent contracts and not paid all wages and overtime to which they were entitled.

144. Plaintiff consents to such persons joining this case as a "collective action" pursuant to 29 USC 2116(b).

145. Plaintiff is legally entitled to discover from the employer the names and addresses of all similarly situated persons and to send notices to such individuals of the collective action. *Hoffman-LaRoche, Inc. v Sperling,* 493 US 165 (1989).

146. Plaintiff therefore requests this Court issue a conditional certification of the existence of a collective action, whereby Plaintiff may then send notices to other current or former employees of Defendants asking them to join the collective action.

147. Under 29 USC 203(d), an employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee.

148. Thus, CSP and all individual Defendants are "employers" under the FLSA.

149. Under 29 USC 216(b), Plaintiff is also entitled to an award from this Court for reasonable attorney fees and costs. See, *Featsent v City of Youngstown,* 70 F3d 900 (6th Cir 1995).

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a. Economic and non-economic damages in whatever amount Plaintiff is found to be entitled, including but not limited to, past, present and future pain and suffering as well as physical, mental and emotional distress;

b.   Liquidated, exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.   Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.   An award for the value of lost fringe and pension benefits, past and future;

e.   An award of interest, costs, and reasonable attorney fees;

f.   An injunction prohibiting any further acts of misclassifications, including that as to Plaintiff and other similarly situated employees; and

g.   Whatever other equitable relief appears appropriate at the time of final judgment, including but not limited to reinstatement of Plaintiff in his position with CSP.

## COUNT 2

## WRONGFUL TERMINATION IN
## VIOLATION OF PUBLIC POLICY

150.   Plaintiff repeats and re-alleges the allegations set forth above.

151.   During the time Plaintiff worked for Defendants, Defendants attempted to create a bogus third party for which Plaintiff was to report to.

152.   Such party was an unlawful attempt to create a fictious reporting relationship for the purpose of violating state and/or federal laws.

153.   Plaintiff expressly questioned the relationship as being unlawful.

154.  Plaintiff also refused to violate such laws in the course of his employment with Defendants.

155.  Plaintiff was suspended/terminated by Defendants due to his refusal to violate a law in the course of his employment.

156.  As a direct and proximate result of Defendants' unlawful actions in suspending/terminating Plaintiff, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; humiliation, anxiety, frustration, helplessness, depression, sadness, indignation, sleeplessness, embarrassment, degradation, shame, nausea, headaches, grief, dejection, misery and physical harm, and loss of the ordinary pleasures of everyday life, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages as provided for under the law.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a.  Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b.   Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.   Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.   An award for the value of lost fringe and pension benefits, past and future;

e.   An award of interest, costs, and reasonable attorney fees;

f.   An injunction prohibiting any further acts of retaliation or discrimination; and

g.   Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT 3

## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

157.  Plaintiff repeats and reincorporates by reference the above stated paragraphs.

158.  As set forth above, Plaintiff was subjected to extreme and outrageous conduct by Defendants; Defendants' conduct was intentional and reckless; and Defendants' conduct caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a.     Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b.     Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.     Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.     An award for the value of lost fringe and pension benefits, past and future;

e.     An award of interest, costs, and reasonable attorney fees;

f.     An injunction prohibiting any further acts of retaliation or discrimination; and

g.     Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT 4

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

159.   Plaintiff repeats and reincorporates by reference the above stated paragraphs.

160.  As set forth above, Plaintiff was subjected to extreme and outrageous conduct by Defendants; Defendants' conduct was negligent and Defendants' conduct caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

    a.  Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

    b.  Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

    c.  Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

    d.  An award for the value of lost fringe and pension benefits, past and future;

    e.  An award of interest, costs, and reasonable attorney fees;

    f.  An injunction prohibiting any further acts of retaliation or discrimination; and

    g.  Whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,


 /s/ *Thomas R. Warnicke*
THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE, PLLC
Attorney for Plaintiff
16291 14 Mile Road, Suite 21
Beverly Hills, Michigan 48025
(248) 930-4411
tom@warnickelaw.com

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.

Respectfully submitted,

*/s/  Thomas R. Warnicke*
Thomas R. Warnicke (P47148)
Attorneys for Plaintiff
Law Offices of Thomas R. Warnicke, PLLC
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com

# EXHIBIT A

**U.S. Department of Labor**       **Wage and Hour Division**
211 W. Fort Street, Suite 517
Detroit, Michigan 48226-3237
(313) 309-4500



September 27, 2017

Aouni Abousaleh

Dearborn, MI 48124

Subject:     CSP Plastics
             Auburn Hills, MI

This acknowledges receipt of the information you furnished indicating your belief that the firm named above may not be in full compliance with federal wage and hour laws.

We intend to look into the matters you describe as soon as possible, but final action may not be completed for some time. When the case is assigned to a field investigator, he or she will contact you for further information and details as needed.

The fact that we received information from you does not in itself prove that any violation occurred nor does it guarantee a successful outcome. If you believe the employer owes you back wages under the Fair Labor Standards Act (FLSA), be aware that you have a legal right to file a private lawsuit against the employer to recover back wages due plus an equal amount in damages as explained the enclosed guide to the FLSA. The recovery of back wages under the FLSA is subject to a statute of limitations. This means any back wages earned more than two years earlier are generally not collectable. Only a lawsuit stops the statute of limitations. The fact that you contacted the Department of Labor does not stop the statute of limitations.

Thank you for bringing this matter to our attention. If you have questions, please contact this office by mail or telephone, being sure to mention the firm's name as shown above. Please advise use if you change you address or phone number.

Sincerely,

/S/
Timolin Mitchell
District Director

Enclosures:    HRG

**U.S. Department of Labor**          **Wage and Hour Division**
                                       211 W. Fort Street, Suite 517
                                       Detroit, Michigan 48226-3237
                                       (313) 309-4500

October 3, 2017

Aouni Abousaleh
█████████████
Dearborn, MI  48124

Subject:      CSP Plastics
              Auburn Hills, MI

This refers to the information you provided indicating the firm named above may not be in full compliance with federal wage hour laws.

This matter has been assigned to Investigator Phillip Gasparotto.

You may contact Investigator Gasparotto by mail or by phone at:

> U.S. Labor Department
> Wage Hour Division
> 211 W. Fort Street, Suite 517
> Detroit, MI  48226-3237
> Telephone: 313-309-4518

The fact that we received the information you provided does not prove any violations occurred nor does it guarantee a fully successful outcome as a result of our involvement.

If you believe the employer owes you back wages under the Fair Labor Standards Act (FLSA) or the Family and Medical Leave Act (FMLA) be aware that you have a right under the law to file a private lawsuit against the employer for back wages and other damages.  Back wages under these laws are subject to a two-year statute of limitations.  This means that any back wages earned more than two years prior are generally not collectable.  The fact that you contacted the Department of Labor does not stop the statute of limitations.

Thank you for your interest in this matter.  If you have any questions, please contact Investigator Gasparotto.

Sincerely,

/s/

Lawrence Hintz
Assistant District Director

Enclosure: FLSA HRG or FMLA fact sheet

# EXHIBIT  B

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| Continental Structural Plastics<br>755 W. Big Beaver Rd.<br>Suite 700<br>Troy, MI  48084<br><br>(248) 593-9500 | $<br>2 Royalties<br>$<br>3 Other income<br>$ | **2010**<br>Form **1099-MISC**<br>4 Federal income tax withheld<br>$ | **Miscellaneous Income**<br><br>**Copy B**<br>**For Recipient** |

| PAYER'S federal identification number | RECIPIENT'S Identification number | 5 Fishing boat proceeds | 6 Medical and health care payments |
|---|---|---|---|
| 52-2108862 | ██████ | $ | $ |

| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest |
|---|---|---|---|
| Aouni Abousaleh | | POSTED<br>$ 56,550.00 | $ |
| Street address (including apt. no.)<br>██████ | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ► ☐ | 10 Crop insurance proceeds |
| City, state, and ZIP code<br>Dearborn, MI  48126 | | 11 | 12 |

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| Account number (see instructions) | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
|---|---|---|
| | $ | $ |

| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|---|
| $ | $ | $ | | $ |
| | | $ | | $ |

Form **1099-MISC**          (keep for your records)          Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| Continental Structural Plastics<br>755 W. Big Beaver Rd.<br>Suite 700<br>Troy, MI  48084<br><br>(248) 593-9500 | $<br>2 Royalties<br>$<br>3 Other income<br>$ | **2011**<br>Form **1099-MISC**<br>4 Federal income tax withheld<br>$ | **Miscellaneous Income**<br><br>**Copy B**<br>**For Recipient** |

| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments |
|---|---|---|---|
| 52-2108862 | ██████ | POSTED | $ |

| RECIPIENT'S name, address, city, and ZIP code | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest |
|---|---|---|
| Aouni Abousaleh<br><br>██████<br><br>Dearborn, MI  48124 | $ 59,750.00 | $ |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ► ☐ | 10 Crop insurance proceeds |
| | 11 | 12 |

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| Account number (see instructions) | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
|---|---|---|
| | $ | $ |

| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|---|
| $ | $ | $ | | $ |
| | | $ | | $ |

Form **1099-MISC**          (keep for your records)          Department of the Treasury - Internal Revenue Service

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| Continental Structural Plastics<br>255 W. Big Beaver Rd.<br>Suite 700<br>Troy, MI   48084<br><br>(248) 593-9300 | $ | 20**12** | **Miscellaneous Income** |
| | 2 Royalties<br>$ | Form **1099-MISC** | |
| | 3 Other income<br>$ | 4 Federal income tax withheld<br>$ | **Copy B**<br>**For Recipient** |
| PAYER'S federal identification number<br>52-2108862 | RECIPIENT'S identification number | 5 Fishing boat proceeds<br>$ | 6 Medical and health care payments<br>$ | |
| RECIPIENT'S name, address, city, and ZIP code<br><br>Aouni Abousaleh<br><br><br><br>Dearborn, MI   48124 | 7 Nonemployee compensation<br>POSTED<br>$ 68,362.50 | 8 Substitute payments in lieu of dividends or interest | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds<br>$ | |
| | 11 | 12 | |
| Account number (see instructions) | 13 Excess golden parachute payments<br>$ | 14 Gross proceeds paid to an attorney<br>$ | |
| 15a Section 409A deferrals<br>$ | 15b Section 409A income<br>$ | 16 State tax withheld<br>$<br>$ | 17 State/Payer's state no. | 18 State income<br>$<br>$ |

Form **1099-MISC**        (keep for your records)        Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, province or state, country, ZIP or foreign postal code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| Continental Structural Plastics<br>255 Rex Blvd.<br>Auburn Hills, MI   48326<br><br>(248) 237-7800 | $ | 20**13** | **Miscellaneous Income** |
| | 2 Royalties<br>$ | Form **1099-MISC** | |
| | 3 Other income<br>$ | 4 Federal income tax withheld<br>$ | **Copy B**<br>**For Recipient** |
| PAYER'S federal identification number<br>52-2108862 | RECIPIENT'S identification number | 5 Fishing boat proceeds<br>$ | 6 Medical and health care payments<br>$ |
| RECIPIENT'S name, street address, city or town, province or state, country, and ZIP or foreign postal code<br><br>Aouni Abousaleh<br><br><br><br>Dearborn, MI   48124 | 7 Nonemployee compensation<br>POSTED  68,975.00 | 8 Substitute payments in lieu of dividends or interest<br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds<br>$ | |
| | 11 Foreign tax paid | 12 Foreign country or U.S. possession | |
| Account number (see instructions) | 13 Excess golden parachute payments<br>$ | 14 Gross proceeds paid to an attorney<br>$ | |
| 15a Section 409A deferrals<br>$ | 15b Section 409A income<br>$ | 16 State tax withheld<br>$<br>$ | 17 State/Payer's state no. | 18 State income<br>$<br>$ |

Form **1099-MISC**        (keep for your records)        www.irs.gov/form1099misc        Department of the Treasury - Internal Revenue Service

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| Continental Structural Plastics<br>255 Rex Blvd.<br>Auburn Hills, MI  48326<br><br>(248) 237-7800 | $<br>2 Royalties<br>$ | 20**14**<br>Form **1099-MISC** | |
| | 3 Other income<br>$ | 4 Federal income tax withheld<br>$ | **Copy B**<br>**For Recipient** |
| PAYER'S federal identification number   RECIPIENT'S identification number<br>52-2108862 | 5 Fishing boat proceeds | 6 Medical and health care payments<br>$ | |
| RECIPIENT'S name, street address, city or town, state or province, country, and ZIP or foreign postal code<br><br>Aouni Abousaleh<br><br><br>Dearborn, MI  48124 | 7 Nonemployee compensation<br>POSTED<br>$58,188.00 | 8 Substitute payments in lieu of dividends or interest<br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds<br>$ | |
| | 11 | 12 | |
| Account number (see instructions) | 13 Excess golden parachute payments<br>$ | 14 Gross proceeds paid to an attorney<br>$ | |
| 15a Section 409A deferrals<br>$   15b Section 409A income<br>$ | 16 State tax withheld<br>$<br>$ | 17 State/Payer's state no. | 18 State income<br>$<br>$ |

Form **1099-MISC**        (keep for your records)        www.irs.gov/form1099misc        Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| Continental Structural Plastics<br>255 Rex Blvd.<br>Auburn Hills, MI  48326<br><br>(248) 237-7800 | $<br>2 Royalties | 20**15**<br>Form **1099-MISC** | |
| | 3 Other income<br>$ | 4 Federal income tax withheld<br>$ | **Copy B**<br>**For Recipient** |
| PAYER'S federal identification number   RECIPIENT'S identification number<br>52-2108862 | 5 Fishing boat proceeds<br>POSTED<br>$ | 6 Medical and health care payments<br>$ | |
| RECIPIENT'S name<br><br>Aouni Abousaleh<br><br>Street address (including apt. no.)<br><br><br>City or town, state or province, country, and ZIP or foreign postal code<br>Dearborn, MI  48124 | 7 Nonemployee compensation<br>$ 60,112.00 | 8 Substitute payments in lieu of dividends or interest<br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | |
| | 11 | 12 | |
| Account number (see instructions)   FATCA filing requirement ☐ | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
| 15a Section 409A deferrals<br>$   15b Section 409A income<br>$ | 16 State tax withheld<br>$ | 17 State/Payer's state no. | 18 State income<br>$ |

Form **1099-MISC**        (keep for your records)        www.irs.gov/form1099misc        Department of the Treasury - Internal Revenue Service

## Form 1099-MISC (2016)

☐ CORRECTED (if checked)

**PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.**

Continental Structural Plastics
255 Rex Blvd.
Auburn Hills, MI   48326
(248) 237-7800

OMB No. 1545-0115

**2016**

Form **1099-MISC**

**Miscellaneous Income**

**Copy B**
**For Recipient**

| Box | Amount |
|---|---|
| 1 Rents | $ |
| 2 Royalties | $ |
| 3 Other income | $ |
| 4 Federal income tax withheld | $ |

**PAYER'S federal identification number**  52-2108862

**RECIPIENT'S identification number**

*POSTED*

| 5 Fishing boat proceeds | 6 Medical and health care payments |
|---|---|
| | $ |

**RECIPIENT'S name, street address, city or town, state or province, country, and ZIP or foreign postal code**

Aouni Abousaleh

Dearborn, MI   48124

| 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest |
|---|---|
| $ 71,760.00 | |
| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ |
| 11 | 12 |

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

**Account number (see instructions)**

**FATCA filing requirement** ☐

| 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
|---|---|

| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ / $ | 17 State/Payer's state no. | 18 State income $ / $ |
|---|---|---|---|---|

Form **1099-MISC**   (keep for your records)   www.irs.gov/form1099misc   Department of the Treasury - Internal Revenue Service

---

## Form 1099-MISC (2017)

☐ CORRECTED (if checked)

**PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.**

Continental Structural Plastics
255 Rex Blvd.
Auburn Hills, MI   48326
(248) 237-7800

OMB No. 1545-0115

**2017** **Miscellaneous Income**

Form **1099-MISC**

**Copy 2**
To be filed with recipient's state income tax return, when required.

| Box | Amount |
|---|---|
| 1 Rents | $ |
| 2 Royalties | $ |
| 3 Other income | $ |
| 4 Federal income tax withheld | $ |

**PAYER'S federal identification number**  52-2108862

**RECIPIENT'S identification number**

| 5 Fishing boat proceeds | 6 Medical and health care payments |
|---|---|
| $ | $ |

**RECIPIENT'S name, street address (including apt. no.) City or town, state or province, country, and ZIP or foreign postal code**

Aouni Abousaleh

Dearborn, MI   48124

| 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest |
|---|---|
| $ 61,386.00 | |
| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds |
| 11 | 12 |

**Account number (see instructions)**

**FATCA filing requirement** ☐

| 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney |
|---|---|

| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ / $ | 17 State/Payer's state no. | 18 State income $ / $ |
|---|---|---|---|---|

Form **1099-MISC**   www.irs.gov/form1099misc   Department of the Treasury - Internal Revenue Service